**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **LAURIE PEARL, individually and on behalf of all others similarly situated,** | **No. 1:20-cv-10529** |
| **Plaintiff,** | |
| **v.** | **Collective Action** |
| **CLEARLINK PARTNERS, LLC** | **Honorable Nathaniel M. Gorton** |
| **Defendant.** | |

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL**
**OF FLSA SETTLEMENT AGREEMENT AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

**I.      INTRODUCTION**

Plaintiff Laurie Pearl ("Plaintiff" or "Pearl"), individually and on behalf of the Settlement Collective defined below, hereby submits her unopposed motion for approval of her FLSA Settlement Agreement with Defendant Clearlink Partners, LLC.[1] This settlement resolves the claims of Plaintiff and the 11 Settlement Collective Members under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") for a total of $300,000.00. As detailed below, this proposed resolution of the Plaintiff's and Settlement Collective's FLSA claims is fair and reasonable and warrants judicial approval. Defendant does not oppose this Motion.

Because the proposed settlement is a fair and reasonable resolution of a *bona fide* dispute, Plaintiff respectfully requests that Court enter an order:

1.  Granting final approval of the Parties' FLSA Collective Action Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act.

2.  Granting final certification to the Settlement Collective pursuant to 29 U.S.C. § 216(b),

---

[1]      The Settlement Agreement is attached hereto as Exhibit A.

1

for settlement purposes only:

> Plaintiff and the Opt-In Plaintiffs (*i.e.*, the individuals who as of March 17, 2022 have filed an Opt-In Consent Form with the Court in *Pearl v. Clearlink Partners, LLC*, No. 1:20-cv-10529 (D. Mass.), and who are identified in the Settlement Agreement) (the "Settlement Collective").

3. Approving the Gross Settlement Amount of $300,000.00 in resolution of this action.

4. Approving the proposed service award in the amount of $10,000.00 from the Gross Settlement Amount to Plaintiff Laurie Pearl for her service to the Settlement Collective.

5. Approving Plaintiff's unopposed request for attorneys' fees, in the amount of $100,000.00 and out-of-pocket costs and expenses, not to exceed $7,569.00, both of which are to be paid from the Gross Settlement Amount.

6. Dismissing this action with prejudice upon Court approval of the settlement.

7. Reserving exclusive and continuing jurisdiction over this action, the named Plaintiff, and the Settlement Collective for purposes of supervising the implementation and enforcement of the Settlement Agreement, this Order, and all settlement administration matters.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Pearl filed the above-captioned lawsuit in the United States District Court for the District of Massachusetts on March 17, 2020, alleging that Clearlink misclassified its Utilization Review Employees (UREs) as exempt from overtime compensation and denied them overtime compensation when they worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C.§ 201, *et seq.* (Count I) and in violation of the Massachusetts Wage Act, G.L. c. 149 §§ 148 and 150, and the Massachusetts Fair Minimum Wage Act, G.L. c. 151 § 1A (Counts II-III). (ECF No. 1). Specifically, Plaintiff alleged that UREs provide utilization review services to Clearlink's clients. Plaintiff alleges that although she and the other UREs routinely worked in excess of forty (40) hours a week but were not paid overtime compensation for hours worked in excess of forty (40) hours per week, as required by the FLSA.

Defendant denies that any members of the Settlement Collective were misclassified, or that any of these individuals were not paid for all hours worked. Defendant maintains that it has, at all

times, complied with all relevant state and federal wage laws with respect to all of its employees including the members of the Settlement Collective, and is agreeing to settle this case solely to avoid the additional time and expense of protracted litigation.

Following the filing of Plaintiff's Complaint, the Parties engaged in a limited initial phase of discovery focused on conditional-certification related issues. During this phase of discovery, the Parties exchanged written discovery requests and document production, conducted depositions, and litigated a motion to compel discovery. During this period, Opt-In McClinton opted-in to this case. (Dkt. 55.)

On May 3, 2021, Plaintiff moved for conditional certification on the FLSA claim and for notice to be issued pursuant to 29 U.S.C. § 216(b). (Dkt. 56.) The Court granted Plaintiff's motion on June 29, 2021, certifying a collective of all individuals who provided utilization review services in the United States between June 29, 2018 and the present. (Dkt. 67.) Following conditional certification and issuance of notice, Opt-In Plaintiffs Brenke, Cholip, Crenshaw, David, McManus, Patterson, Espejo, Kneppar, Litton, and Taraszuk, opted into this case. (Dkt. 71, 73-74, 76-80.).

At the close of the opt-in period, the Parties agreed to engage in private mediation. The Parties jointly requested and the Court entered a stay of the case on January 11, 2022. (Dkt. 83.) Thereafter, Clearlink provided payroll data, time keeping records, and contracts or offer letters for Settlement Collective Members, to Plaintiff's Counsel (as defined below) to allow them to calculate potential damages for the asserted claims. Plaintiff's Counsel conducted a detailed damages analysis based on the timekeeping and pay records produced by Clearlink. On March 17, 2022, the Parties engaged in private mediation with experienced wage and hour mediator Dennis Clifford. Schalman-Bergen Decl. ¶ 14. After continued arms' length settlement negotiations, the Parties reached an agreement memorialized in a long form, the essential terms of which are set

forth below. Each of the Plaintiff and 11 Settlement Collective Members have reviewed and executed the Settlement Agreement.[2]

### III.    <u>TERMS OF THE SETTLEMENT AGREEMENT</u>

The Settlement Agreement provides for a Gross Settlement amount of $300,000.00. Settlement Agreement ¶ 2(b). The Gross Settlement Amount includes sums to cover a service award to Plaintiff Laurie Pearl in the amount of $10,000.00; attorneys' fees in the amount of one-third of the gross settlement amount, or $100,000.00; and costs in the amount of $7,569.00. *Id.* The Gross Settlement Amount resolves the claims of Plaintiff and the Settlement Collective, consisting of individuals who opted into this case – a total of 12 people.

Payments of the Settlement Awards shall be made by Clearlink via ACH transfer within fifteen (15) business days of the Court's Order finally approving the Settlement. Clearlink shall make these transfers utilizing the existing banking information in Clearlink's employment records, unless instructed to use different transfer information for one or more individuals by Plaintiff's Counsel. *Id.*¶ 4(b).

Calculation of Settlement Awards are based on workweeks worked by each Settlement Collective Member during the Relevant Time Period, which are taken from Clearlink's payroll records. *Id.* ¶ 4(a). Each Settlement Collective Member shall receive no less than a minimum Settlement Award of $1,000. *Id.* ¶ 4(a)(iv). A breakdown of Settlement Awards is attached as Exhibit A to the Settlement Agreement.

In exchange for the consideration set forth in this Settlement Agreement, the Collective Members agree to release Clearlink, and all of its direct and indirect parent corporation(s),

---

[2]    Attached Exhibit A (the Settlement Agreement) includes the signature pages collected to date. One opt-in signature remains outstanding. Plaintiff will supplement with an updated copy of Exhibit A upon receipt of the one remaining signature.

subsidiaries, divisions, affiliates, insurers, reinsurers, business units, professional employment organizations, representatives, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities, from any and all local, state, and federal wage and hour-related claims, including without limitation the Massachusetts Wage Laws, G.L. c. 149 § 148, 150 and c. 151 § 1A *et seq.*, that accrued during each Collective Members' work with Clearlink through March 17, 2022, including claims for unpaid wages, overtime, liquidated damages, penalties, interest, attorneys' fees and costs, and claims derived from the alleged failure to pay overtime or other due wages during that period that were or could have been brought in the Action. *Id.* ¶ 2(a).

## IV.    ARGUMENT

As discussed below, because the Settlement reached by the Parties represents a fair and reasonable resolution of a *bona fide* dispute, the Court should enter the accompanying proposed order approving the Settlement of the Settlement Collective Members' FLSA claims; finally certifying the proposed collective for purposes of settlement; approving a service award to Plaintiff Laurie Pearl in the amount of $10,000.00 and approving the award of attorneys' fees of one-third of the Gross Settlement Amount ($100,000) and costs in the amount of $7,569.00.

### A.    Standard for Settlement Approval under the FLSA.

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be . . . ." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706

(1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Cheeks v. Freeport Pancake H., Inc.*, 796 F.3d 199, 206 (2d Cir. 2015); *Lynn's Food Stores, Inc. v. U.S., U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982). "Requiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Cheeks*, 796 F.3d at 206 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

## B.    The Settlement is Fair and Reasonable Resolution of a *Bona Fide* Dispute Under the FLSA

"The Court may approve the settlement upon a finding that all parties to the action have agreed to it, and that it represents a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1355). The settlement in this case satisfies these criteria. In this case, a *bona fide* dispute exists regarding Plaintiff's FLSA claims. Plaintiff has alleged that she and the Settlement Collective Members were misclassified by Clearlink as exempt, and, as a result, were not paid the overtime premium for hours worked in excess of 40 hours per week. *See* Compl., Dkt. 1.  Clearlink denies these allegations, and it maintains that the Settlement Collective Members were properly compensated. *See* Def.'s Ans., Dkt. 12. This is sufficient to establish the existence of a *bona fide* dispute. *See, e.g., Singleton*, 146 F. Supp. 3d at 261 ("the Court agrees that the parties' proposed settlement represents a fair and reasonable resolution of this dispute, and that the settlement was reached through arms-length negotiations . . . and it finds that the early settlement of this dispute will avoid potentially lengthy and expensive

litigation over what appears to be a modest amount of alleged damages."). In addition, had this case gone forward, Defendant would have likely disputed the propriety of final collective certification in this case. Schalman-Bergen Decl. ¶ 18. Defendant would have also argued that it acted in good faith with regard to the classification of Plaintiff and Settlement Collective Members, and that liquidated damages are not warranted. *Id.* ¶ 19. Thus, the Settlement Agreement reflects a reasonable compromise of disputed issues related to the merits as well as collective treatment of the Plaintiff's and Settlement Collective Members' claims.

The Settlement also provides a significant recovery for Settlement Collective Members in this case. Settlement Agreement ¶ 2(b); Schalman-Bergen Decl. ¶ 22. The Gross Settlement Amount represents approximately 90% of the Settlement Collective Members' overtime damages, based on a detailed analysis the possible overtime damages for each of the Settlement Collective Members were they eventually successful at trial. *Id.* The average Settlement Award is $15,202.66, and the maximum award is $37,339.00. Settlement Agreement, Ex. A; Schalman-Bergen Decl. ¶ 25. These are substantial amounts of compensation, and settlement is an excellent result for the Settlement Collective Members in light of the likelihood that, should litigation go forward, the Collective Action members may recover nothing at all, or may face a significantly reduced recovery. *Id.* ¶ 16. Moreover, each of the Settlement Collective Members have reviewed, approved and executed the Settlement Agreement, which includes the amount that they will be due to receive if the settlement receives Court approval.

The formula for allocating settlement awards to the Settlement Collective Members is also fair and reasonable. The Settlement Agreement provides for a distribution formula where each Settlement Collective Member will receive a per share award from the Net Settlement Amount, which will be allocated among Settlement Collective Members based on the number of workweeks

that they worked for Defendant during the Relevant Time Period as a fraction of the overtime hours worked by all Settlement Collective Members.[3] Settlement Agreement ¶ 4; Schalman-Bergen Decl. ¶ 23. Thus, those individuals who worked more workweeks for Defendant will receive more under the Settlement Agreement. Settlement Agreement ¶ 4(a); Schalman-Bergen Decl. ¶ 23. Each Settlement Collective Member shall receive no less than a minimum Settlement Award of $1,000.00 Settlement Agreement ¶ 4(a)(iv); Schalman-Bergen Decl. ¶ 25.

The scope of the release in the Settlement Agreement is also fair and reasonable. Settlement Collective Members agree to release Clearlink, and all of its direct and indirect parent corporation(s), subsidiaries, divisions, affiliates, insurers, reinsurers, business units, professional employment organizations, representatives, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities, from any and all local, state, and federal wage and hour-related claims, including without limitation the Massachusetts Wage Laws, G.L. c. 149 § 148, 150 and c. 151 § 1A *et seq.*, that accrued during each Collective Members' work with Clearlink through March 17, 2022, including claims for unpaid wages, overtime, liquidated damages, penalties, interest, attorneys' fees and costs, and claims derived from the alleged failure to pay overtime or other due wages during that period that were or could have been brought in the Action. Settlement Agreement ¶ 2(a); Schalman-Bergen Decl. ¶ 26.

### C. Certification of the FLSA Collective Pursuant to 29 U.S.C. § 216(b) is Appropriate for Settlement Purposes

This Court has already found that Plaintiff and Settlement Collective Action Members are

---

[3] Plaintiff Pearl and Opt-In Plaintiff McManus shall receive 3 settlement shares for each workweek, in acknowledgment of mandatory treble damages provided for under M.G.L. c. 149 § 150. Settlement Agreement ¶ 4(a)(ii); Schalman-Bergen ¶ 24.

similarly situated for purposes of conditional certification. For settlement purposes only, the Court should now grant final certification to the Settlement Collective. "At the second stage [following conditional certification], the Court is tasked with making 'a factual determination as to whether there are similarly-situated employees who have opted in.'" *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010) (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 n. 2 (5th Cir.2008)). "To make this determination, 'courts consider factors such as: 1) the disparate factual and employment settings — *e.g.*, whether plaintiffs were employed in the same corporate department, division, and location; 2) the various defenses available to defendant which appear to be individual to each plaintiff; and 3) fairness and procedural considerations.'" *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 67 (D. Mass. 2018) (quoting *Roberts v. TJX Cos.*, No. 13-cv-13142-ADB, 2017 WL 1217114, at *3 (D. Mass. Mar. 31, 2017)) (internal quotation marks omitted).

Plaintiff and the Settlement Collective Members in this case are similarly situated, as they performed the same tasks, which generally consisted of providing utilization review services to Clearlink clients. Schalman-Bergen Decl. ¶ 21. They worked similar schedules and were subject to the similar compensation policies and practices. *Id.* They were not paid time-and-a-half for hours worked in excess of forty a workweek. *Id.* In sum, Plaintiff has demonstrated the existence of a collective of similarly situated employees, such that collective certification of the collective sought herein is appropriate for settlement purposes. *Id.*

### D.    The Proposed Service Payment to the Named Plaintiff is Fair and Reasonable

The settlement also provides for a service payment of $10,000 to Plaintiff Laurie Pearl, which is fair and reasonable. Settlement Agreement ¶ 3(b). Plaintiff Pearl took on the risk of stepping forward and bringing this case against Clearlink on behalf of other UREs. Schalman-Bergen Decl. ¶ 28. Plaintiff Pearl provided her contracts and other documents relevant to her work

with Clearlink and helped Plaintiff's Counsel develop their theories of liability and damages models. She also provided significant assistance to Plaintiff's Counsel as they drafted the Complaint, reviewed Defendant's document production, prepared motion for conditional certification, and prepared a settlement demand. *Id.* ¶ 29. In addition, Plaintiff Pearl spent a significant amount of time preparing for and being deposed by defense counsel in this matter; Plaintiff sat for her deposition on November 19, 2020. *Id.* ¶ 30.  The incentive award of $10,000 fairly recognizes the services that she has performed in advancing the Settlement Collective Members' interests and the time that she dedicated to this lawsuit. *Id.* ¶ 31.

Courts in this Circuit have routinely recognized the importance of such awards in wage and hour cases of this nature. *See Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017) (quoting *Bozak v. FedEx Ground Package Sys., Inc.,* No. 3:11–cv–00738–RNC, 2014 WL 3778211, at *4 (D. Conn. July 31, 2014)) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."). The court in *Lauture* recognized the significant "benefits of plaintiffs bringing wage and hour collective and class litigation because, without them, other employees may not assert their rights due to fears 'of retaliation or of being 'blackballed' in [their] industry,'" and approved a $15,000.00 incentive award to each class representative. *Lauture*, 2017 WL 6460244, at *2 (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011)). The service award requested in this case properly compensates Plaintiff Pearl for the risks she took on in coming forward to bring this case, particularly in view of the fact that Ms. Pearl continues to work in the healthcare industry.  In addition, Plaintiff Pearl has executed a General Release (contained in Exhibit B to the Settlement

Agreement), which is broader than that Release agreed to by the 11 other Settlement Members in this case and is for which the Service Award serves as consideration.

### E.    The Attorney's Fees and Costs Provision of the Settlement Agreement Fairly Compensates Plaintiff's Counsel for the Time and Expense of Litigating This Matter.

The Settlement Agreement further provides for the payment of Plaintiff's attorneys' fees in the amount of $100,000.00 (one-third of the Gross Settlement Amount), and costs of $7,569.00. Settlement Agreement ¶ 3(a). Plaintiff's Counsel have collectively spent more than 435 hours (a total of 438.6 hours), advocating on behalf of Plaintiff and the Settlement Collective, for a combined lodestar of $350,937.50. Schalman-Bergen Decl. ¶¶ 34-35; Declaration of Camille Fundora Rodriguez ("Rodriguez Decl.") ¶ 22. The requested award of $100,000.00 is therefore reasonable and should be approved. Plaintiff's Counsel are also entitled to recover their out-of-pocket costs, including costs associated with the administration of the settlement in the months to come.

Counsel's contingency fee agreement provides for recovery of fees equal to one-third of the gross recovery, so Plaintiff's Counsel's request is in line with their fee agreement. In fact, fee requests similar to the one made by Plaintiff here have routinely been approved by courts, particularly in employment cases. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving attorneys' fees of one-third); *Scovil v. FedEx Ground Package Sys., Inc.*, 1:10-CV-515-DBH, 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) ("contingent fees of one-third are common" and "consistent with wage-and-hour settlements in the neighboring jurisdiction of Massachusetts"). Notably, the amount Plaintiff's Counsel will receive is significantly less than their fees when calculated under a lodestar method. Given Plaintiff's Counsel's substantial

experience in wage and hour litigation,[4] and the result achieved for the Settlement Collective Members, this fee request is reasonable.

Plaintiff's Counsel are also entitled to an award of their out-of-pocket costs. In addition to its provision for reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b). Thus, awards of reasonable out-of-pocket costs incurred by Plaintiff's Counsel are routinely approved by courts as part of FLSA settlements. *See, e.g., Lauture*, 2017 WL 6460244, at *3 (approving Plaintiffs' request for costs as part of FLSA settlement, including costs of settlement administration); *Marrotta v. Suffolk County*, 726 F. Supp. 2d 1, 4 (D. Mass. 2010) (awarding attorneys' fees and costs to plaintiffs as part of FLSA settlement). Plaintiff's Counsel have, to date, incurred costs in the amount of $7,569.00. *See* Settlement Agreement ¶ 3(a); Schalman-Bergen Decl. ¶¶ 41-42; Rodriguez Decl. ¶¶ 26-28. Plaintiff's request for costs is therefore reasonable and should be approved.

## V.    <u>CONCLUSION</u>

Because the Settlement reached by the Parties in this case is fair and reasonable, and meets the requirements for FLSA settlement approval, this Court should enter an Order:

1.  Granting final approval of the Parties' FLSA Collective Action Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act.

2.  Granting final certification to the Settlement Collective pursuant to 29 U.S.C. § 216(b), for settlement purposes only:

---

[4]    Lichten & Liss-Riordan, one of the lead counsel firms for Plaintiff, has been lead or co-counsel in numerous wage and hour cases in the United States, and has successfully argued cases arising under state and federal wage laws before the before the Supreme Courts of Maine, Massachusetts, Hawaii, and New Jersey, and in the United States Court of Appeals for the First, Third, Seventh, Sixth, Eleventh and Ninth Circuits. *See generally* Schalman-Bergen Decl. ¶¶ 6-9. Similarly, Berger Montague PC, the other lead counsel firm in this case, has an extensive background in litigation on behalf of employees, and currently serves as lead or co-lead counsel in many employment class and collective actions in federal courts across the country, including unpaid wage cases similar to this case. Rodriguez Decl. ¶¶ 2-4; Ex A.

Plaintiff and the Opt-In Plaintiffs (*i.e.*, individuals who as of March 17, 2022 have filed an Opt-In Consent Form with the Court in *Pearl v. Clearlink, LLC*, No. 1:20-cv-10529 (D. Mass.)) (the "Settlement Collective").

3.  Approving the Gross Settlement Amount of $300,000.00 in resolution of this action.

4.  Approving the proposed service award in the amount of $10,000.00, from the Gross Settlement Amount to Plaintiff Laurie Pearl for her service to the Settlement Collective.

5.  Approving Plaintiff's unopposed request for attorneys' fees, in the amount of $100,000.00 and out-of-pocket costs and expenses in the amount of $7,569.00, both of which are to be paid from the Gross Settlement Amount.

6.  Dismissing this action with prejudice upon Court approval of the settlement.

7.  Reserving exclusive and continuing jurisdiction over this action, the named Plaintiff, and the Settlement Collective for purposes of supervising the implementation and enforcement of the Settlement Agreement, this Order, and all settlement administration matters.

Dated: June 10, 2022                           Respectfully submitted,

/s/ *Sarah Schalman-Bergen*
Harold Lichten
Sarah R. Schalman-Bergen
Krysten Connon
Anastasia Doherty
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com
ssb@llrlaw.com
kconnon@llrlaw.com
adoherty@llrlaw.com

Camille Fundora Rodriguez
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
crodriguez@bm.net

*Attorneys for Plaintiff*
*and the Collective*

13

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2022, a copy of this document was served by electronic filing on all counsel of record.

/s/ *Sarah Schalman-Bergen*
Sarah Schalman-Bergen